THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AT&T MOBILITY LLC, a Delaware limited liability corporation, | |
| Plaintiff, | No.  C10-468Z |
| vs. | ORDER |
| HOLADAY-PARKS-FABRICATORS, INC., a Washington corporation, | |
| Defendant. | |
| v. | |
| EVERGREEN  POWER  SYSTEMS,  INC., a Washington corporation, et al., | |
| Third-Party Defendants. | |

This matter comes before the Court on Plaintiff AT&T's Motion for Partial

Summary Judgment against Holaday-Parks, docket no. 88, and Holaday-Parks' Motion

for Summary Judgment against AT&T, docket no. 90.  For the reasons discussed below,

ORDER - 1

the Court hereby GRANTS in PART and DENIES in PART AT&T's Motion and DENIES Holaday-Parks' Motion.

## I.     Background

On March 8, 2011, Holaday-Parks, Inc. ("Holaday-Parks") entered into a contract ("Construction Agreement") with AT&T Mobility, LLC ("AT&T") to serve as the general contractor to provide a back-up power system for AT&T's Bothell Data Center.  Compl. ¶ 4 (docket no. 1).  This work included the procurement and installation of a fuel system to provide diesel fuel to generators, which included installation of three above-ground fuel tanks.

The construction of the fuel system was complete, or nearly complete, when on July 21, 2008, Steve Latimer, an employee of Holaday-Parks' subcontractor Source North America ("Ace Tank"), was at the facility with Holaday-Parks project coordinator Alicia Martinez, and noticed a malfunction in the Day Tank 3 fuel system. The fuel tank was showing only 71% full on the control panel, but was in fact full. Identifying the malfunction as a faulty sensor, Latimer disabled the sensor by disconnecting a wire, and took the tank off line.  Exs. E & F to Decl. of Jeffrey D. Laveson in Supp. of Holaday Parks' Mot. for Summ. J. ("Laveson Decl.") (docket no. 91).  That same afternoon, Martinez met with AT&T employee Mike Richey to inform him of the problem.  She did not notify AT&T in writing.  Ex. F to Laveson Decl.

Ritchey asked AT&T employee Carleton Kirkus to troubleshoot the system the following week.  On July 29, 2008, Kirkus and Holaday-Parks' electrical subcontractor

ORDER - 2

Evergreen Power System's ("Evergreen") employee Steve Stathum inspected the tank. Upon noticing the disconnected wire, Stathum reconnected the wire and turned the tank back on.  Ex. O to Laveson Decl.

On August 1, 2008, 16,000 gallons of diesel fuel overflowed from Day Tank 3. Compl. ¶¶ 4, 12.  On March 19, 2010, AT&T filed suit against Holaday-Parks.  On April 12, 2010, Holaday-Parks filed a third-party complaint against Evergreen, Ace Tank, which supplied the fuel control system, and Phillips Pump, LLC, which manufactured the fuel control system.  Def. Answer and Third Party Compl. (docket no. 7).

AT&T now moves for partial summary judgment against Holaday-Parks, arguing that Holaday-Parks breached the Construction Agreement in three respects and that Holaday-Parks' fault-based affirmative defenses should be dismissed.  Holaday-Parks moves for summary judgment, seeking to dismiss all of AT&T's claims.

## II.   DISCUSSION

### I.    Standard of Review

The Court shall grant summary judgment if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In support of its motion for

summary judgment, the moving party need not negate the opponent's claim, <u>Celotex</u>, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, <u>Anderson</u>, 477 U.S. at 249.  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  <u>Id.</u> at 255, 257.  When the record taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  <u>See</u>, <u>e.g.</u>, <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006).

**A.    AT&T's Motion for Partial Summary Judgment (Docket no. 88)**

AT&T moves for partial summary judgment on its claims for Breach of Contract for performance of defective work, failure to supervise, and failure to provide written notice of defects in Holaday-Parks' work.  AT&T also moves to dismiss several of Holaday-Parks' affirmative defenses.

**1.    AT&T's Breach of Contract Claims**

As an initial matter, the parties do not dispute that the Construction Agreement between Holaday-Parks and AT&T was still in effect at the time of the fuel spill.[1]  Nor do the parties dispute that Georgia law should apply to AT&T's Breach of Contract claims, acknowledging the choice of law provision in the Construction Agreement.

---

[1] Holaday-Parks does argue that the fuel system was turned over to AT&T prior to the spill, but whether or not it was "turned over" is immaterial to whether the contract still governed, which turns on "project completion."  <u>See</u> Construction Agreement Article 3 (docket no. 1-2).

a)      *Performance of Defective Work*

AT&T argues that by producing defective work, Holaday-Parks breached Article 1 of the Construction Agreement, which provides that "[Holaday-Parks] agrees to furnish all supervision, tools, equipment, labor and materials necessary to complete fully, in a *workman like manner* in accordance with the Contract Documents . . . and within the times specified in the Project Schedule . . . for each Project." Construction Agreement Article 1 (docket no. 1-2) (emphasis added). Under Georgia law, a breach of the contract duty of "workmanlike manner" occurs "when the builder fails to exercise a reasonable degree of care, skill, and ability under similar conditions and like surrounding circumstances as is ordinarily employed by others in the same profession." Nulite Indus. Co., LLC v. Horne, 252 Ga. App. 378, 379 (2001) (quoting Hall v. Harris, 239 Ga. App. 812, 817 (1999)).

AT&T also relies upon the warranty provision of the Construction Agreement as evidence of what the parties intended performance of the work on the project would entail. Specifically, the warranty provision provides that:

> [Holaday-Parks] warrants to the Company that all materials and equipment furnished under this Contract will be new unless otherwise specified, and that all Work will be of good quality, free from faults and defects and in conformity with best trade practices and the Contract Documents.

Construction Agreement Article 4, subsection D(1).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

AT&T argues that Holaday-Parks admits that Holaday-Parks' subcontractor's use of unshielded wire was a breach of the duty to perform work in a workmanlike fashion and free from defects, relying on Holaday-Parks' expert's report stating that shielded wire should have been used because the unshielded wire that was used "provided no electrical shield from outside EMI generated by higher voltages, rotating machines, lighting ballast, and other sources of electromagnetic noise."  Supplemental Expert Report of Jon Mathison (docket no. 74-1).  AT&T also points to Holaday-Parks' assertion in its briefing in response to Evergreen's motion for summary judgment that "[u]ncontroverted evidence further supports AT&T's contention that the unshielded wire specified and installed by Evergreen caused the fuel control system malfunction." Holaday-Parks' Response to Evergreen's Motion for Summary Judgment at 10 (docket no. 76).

Holaday-Parks meekly responds that, although it agrees that the "destructive influence of electromagnetic noise on the analog module explains why the system broke," this explanation "falls far short of the conclusion made by AT&T that 'defective work was performed.'"  Holaday-Park's Response at 10 (docket no. 101). Holaday-Parks also contends this is not an "admission that defective work caused the fuel spill."  However, Holaday-Parks fails to elaborate a theory for why the use of unshielded wire was not "defective work" in its Response.  Moreover, Holaday-Parks elaborates at length as to why the use of unshielded wire *was* defective work in its Response to Evergreen's motion for summary judgment.  See, e.g., Holaday-Parks

ORDER - 6

Response to Evergreen's Motion for Summary Judgment at 7 (citing deposition testimony of Evergreen's subcontractor Gary Gerber, and elaborating that "Mr. Gerber admits he included the low-voltage fuel control system wiring on his stamped drawing, without a disclaimer, even though he and his firm did not feel themselves qualified to design low voltage systems.  This admission, standing alone, is sufficient evidence of Gerber's breach of duty as a professional engineer and his breach of the subcontract under which he stamped the low voltage control wiring diagrams for Evergreen.").  As no issue of material fact exists as to whether the installation of unshielded wire was defective, the Court grants summary judgment in favor of AT&T on this issue.[2]  The issue of whether the defect was the proximate cause of the spill is left for trial.

b)      *Failure to Supervise*

AT&T argues that Holaday-Parks breached Article 4, subsection B of the Construction Agreement by failing to supervise the work of Holaday-Parks' subcontractors.  Article 4, subsection B provides in relevant part that:

> [Holaday-Parks] shall supervise and direct the Work, using his best skill and attention.  He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract.

---

[2] It is not material to this motion whether the defective work at issue was performed by one of Holaday-Parks' subcontractors.  The Construction Agreement specifies that Holaday-Parks is responsible for "all construction means, methods, techniques, sequences and procedures."  Article 4, subsection B(1).  Moreover, under Georgia law, a contractor may not evade its duty under a construction contract by hiring subcontractors.  See Hudgins v. Bacon, 171 Ga. App. 856, 862 (1984).

AT&T points to deposition testimony of Holaday-Parks' account executive, Bijit Giri, to attempt to show that Holaday-Parks did not supervise the work of its subcontractors:

> Q: Did you understand that Holaday-Parks had an obligation under Exhibit No. 218 [the Construction Agreement] to coordinate and supervise all of the work on the fuel system?
> A: I understand that we had a responsibility to coordinate all of the work.
> Q: Did you think you had responsibility for supervising all of the work on the fuel system?
> A: No, I don't – each discipline does their part of the work. Our responsibility was to make sure that they were all coordinated and they supervised each of their own trades or specialty.
> …
> Q: Did you have responsibility for supervising any part of the work that Evergreen did on the fuel system?
> A: In my opinion, no.  We didn't – we don't supervise any of their little pieces of work.  We can't – we couldn't."

Dep. of Bijit Giri at 39-40, Ex. E to Decl. of Seann C. Colgan in Supp. of Pl. AT&T's Motion for Partial Summ. J. ("Colgan Decl.") (docket no. 89-1) (objections to form omitted).

Holaday-Parks responds that it is unreasonable to expect it to supervise the employees of its subcontractors in performing their respective specialized disciplines, especially when Holaday-Parks has no in-house electrical engineers or other staff who would be competent to supervise specialized work.  Under Holaday-Parks' interpretation, its duty to supervise under Article 4 was not to supervise the minute details, but rather to supervise the supervisors.  In other words, Holaday-Parks' role was

"to make sure that [the subcontractors] were all coordinated and they supervised each of their own trades or specialty."  Dep. of Bijit Giri at 39.

The Construction Agreement is ambiguous as to what level of supervision was required of Holaday-Parks.  It is not clear whether the term "supervise" means that Holaday-Parks was supposed to act as direct supervisor for all aspects of the project, including the technical work of the employees of its subcontractors, or whether "supervise" in this case means to ensure that each subcontractor was supervising the work of its own employees.  Because the term is ambiguous, an issue of fact exists that cannot be resolved on summary judgment.  See Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Georgia, 301 Ga. App. 367, 368 (2009) ("[T]he issue of what the ambiguous [contract] language means and what the parties intended must be resolved by a jury.").

                     *c)*      *Failure to Provide Written Notice to AT&T of Defects in the Work*

AT&T argues that by failing to provide AT&T written notice of the defective fuel tank monitor, Holaday-Parks breached Article 13 of the Construction Agreement.  Article 13, subsection B(1) provides that:

> If any part of [Holaday-Parks'] Work depends for its proper execution or end result upon the work of any other contractor or supplier, [Holaday-Parks] shall inspect and promptly report in writing to [AT&T] any defect in the Work that renders it unsuitable for proper execution or end result, and thereafter [Holaday-Parks] shall not proceed with any phase of the Work until authorized to do so by [AT&T] in writing.

ORDER - 9

Holaday-Parks admits that it did not provide notice in writing of the malfunction in the control system for Day Tank 3, although it asserts that its project coordinator, Alicia Martinez, made a verbal report of the defect.  Because the contract in unambiguous in its requirement that Holaday-Parks report defects in writing, the Court grants summary judgment in favor of AT&T on this issue.  Whether this breach was a cause of any damage to AT&T, however, will be determined at trial.

### 2.      AT&T's Motion to Dismiss Holaday-Parks' Affirmative Defenses

The Court has ruled that Georgia law applies to AT&T's breach of contract claims and to Holaday-Parks' affirmative defenses.  See Minute Order (docket no. 117).

Both parties agree that tort-based affirmative defenses may only be presented if the contract imposes the necessary tort duty.  C.f. Georgia Power Co. v. Kalman Floor Co., 256 Ga. 534, 534 (1986) (holding that the trial court erred in charging the jury that the plaintiff had a duty to exercise ordinary care when the contract did not impose a contractual duty to avoid contributory negligence).  The parties dispute, however, whether the Construction Agreement imposed such a duty on AT&T.

The indemnity portion of the Construction Agreement provides that:

> 1)      To the fullest extent permitted by law, [Holaday-Parks] waives any right of contribution against and shall defend, indemnify and hold harmless [AT&T], any [AT&T's] Representative, the Architect and their respective agents, consultants and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from or in connection with the performance of the Work on any

Project awarded to Contractor, *provided that any such claim, damage, loss or expense . . . is caused in whole or in part by any negligent act or omission of [Holaday-Parks], any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.* Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity or contribution which would otherwise exist as to any party or person described in this Agreement.

…

5)  To the extend [sic] permitted by law, the indemnification obligations of [Holaday-Parks] under this Contract shall not extend to the liability of [AT&T], any [AT&T's] Representative, or the Architect, or their agents, consultants or employees, *arising out of their own negligence.*

Construction Agreement, Article 4, subsection O (emphasis added).  Given that AT&T has brought a claim against Holaday-Parks under the indemnification provision of the Construction Agreement, which limits indemnity for liability arising from AT&T's own negligence, and given that parties agree that tort-based affirmative defenses may be presented if the contract imposes the necessary tort duty, the Court declines to dismiss Holaday-Parks' affirmative defenses.  The Court defers ruling on the issue of whether Holaday-Parks' affirmative defenses apply to AT&T's contract claims.  The parties should address this issue in their trial briefs.

///

///

///

B.      **Holaday-Parks' Motion for Summary Judgment (Docket no. 90)**

Holaday-Parks also moves for summary judgment, seeking to dismiss all of AT&T's claims.  Because factual disputes exist, the Court declines to grant summary judgment on all claims.

1.      **AT&T's Breach of Contract Claims / Last Clear Chance**

Holaday-Parks challenges AT&T's Breach of Contract Claims (First and Second Causes of Action) on the assertion that "reasonable minds would necessarily find that AT&T's own negligence was the predominant cause (greater than 50%) of the spill," and because AT&T had the "last clear chance" to prevent the spill.  Holaday-Parks' Motion for Summary Judgment Against AT&T at 12.

There is a significant factual dispute as to the cause of the spill and who had the "last clear chance" to prevent it.[3]  For example, Holaday-Parks argues that AT&T employee Kirkus was negligent in reconnecting the tank without verifying that it was working properly, and that therefore AT&T's actions were the proximate cause of the spill.  Exs. O & P to Laveson Decl.  AT&T responds that because Martinez never made a report in writing to AT&T about exactly what was malfunctioning, and because she never told AT&T employee Ritchey that Latimer had disconnected the fuel system wiring, Kirkus and Stathum had no way of knowing that they should not reconnect the disconnected wire.  Exs. H, J, & K to Decl. of Seann C. Colgan in Supp. of Pl's Opp'n

---

[3] Under Georgia law, the last clear chance doctrine provides that "if the person who has the last clear chance to avoid causing injury fails to use ordinary care to do so, his negligence is considered the proximate cause of the injury."  Hunter v. Batton, 160 Ga. App. 243, 246 (1961).

to Holaday-Parks Mot. for Summ. J. (docket no. 100).  Accordingly, the Court declines to enter summary judgment in favor of Holaday-Parks on AT&T's Breach of Contract Claims.

### 2.    AT&T's Indemnification Claim

Holaday-Parks moves to dismiss AT&T's Indemnification Claim (Third Cause of Action), arguing that (1) Holaday-Parks has no obligation to indemnify AT&T for liability arising from AT&T's own negligence; (2) Holaday-Parks' indemnification is conditioned on notice; and (3) Holaday-Parks cannot be liable for third party property damage under the doctrine of "acceptance."

There are significant factual disputes as to each of Holaday-Parks' reasons to dismiss AT&T's Indemnification Claim, and as such, the Court declines to enter summary judgment on this claim.  First, although Holaday-Parks is correct that under the Construction Agreement it has no obligation to indemnify AT&T for liability arising from AT&T's "own negligence," to grant summary judgment on this basis the Court would have to rule that AT&T's negligence was a proximate cause of the spill, which it cannot do at the summary judgment stage in light of factual disputes as to proximate cause.[4]

---

[4] Holaday-Parks also argues there is no duty to indemnify AT&T where the spill arose from AT&T's own negligence "even if there where [sic] concurrent negligence." Holaday-Parks' Motion for Summary Judgment at 7.  However, even if both parties were negligent, concurrent negligence is still an issue of fact not properly resolved on summary judgment.

Second, in response to Holaday-Parks' argument that indemnification is conditioned on notice, AT&T points to a notice letter asking Holaday-Parks to honor its indemnification obligations, which Holaday-Parks disputes the sufficiency of as a factual matter.  Ex. S to Colgan Decl.

Article 4, subsection O of the Construction Agreement provides that:

> Promptly after becoming aware of any claims or potential claims which may be subject to [Holaday-Parks'] indemnification as set forth herein, [AT&T] shall notify [Holaday-Parks] in writing specifying in reasonable detail the nature of the claims or potential claims.

Holaday-Parks argues that because the notice letter was sent nine months after the spill, it does not comply with the written notice requirement, "which was intended to give [Holaday-Parks] (and its insurers) an opportunity to participate in the remediation." Holaday-Parks' Reply at 10 (docket no. 110).  AT&T responds that the letter was sent promptly after becoming aware of a penalty by the Environmental Protection Agency, and therefore it complies with

Article 4, subsection O of the Construction Agreement.  Because a factual dispute exists as to the sufficiency of the letter, the Court cannot rule on summary judgment that AT&T may not pursue an indemnification claim for lack of notice.

Finally, in response to Holaday-Parks argument that it cannot be liable for third party property damage under the doctrine of "acceptance," [5]  AT&T disputes as a

---

[5] Under Georgia law, acceptance doctrine provides that:

factual matter that AT&T "accepted" the system and argues that the acceptance

doctrine does not apply to hidden defects, such as the defect in the wire at issue here.

To support its argument that it did not accept the system, AT&T points to the fact that it

never signed a document certifying completion of the work, and that it is undisputed

that a "punch list" of unfinished work, needed before certification of project

completion, was ongoing at the time of the spill.  Ex. C to Colgan Decl.  To support its

argument that the defect was hidden, AT&T points to the fact that the defect in the wire

was not readily observable and that it was not "understood until much later that

shielded wiring should have been used."  AT&T's Response at 18 (docket no. 99).

Because whether the system was "accepted" and whether the defect was hidden are

issues of material fact, the Court declines to enter summary judgment under the

doctrine of acceptance.

### 3.    AT&T's Breach of Warranty Claim For the Leaking Manway

Holaday-Parks seeks to dismiss AT&T's breach of warranty claim related to

failure to repair the leaking manway (Fifth Cause of Action) on the basis that (1) AT&T

has provided no documents to substantiate damages for this claim; and (2) as a matter

of law there has been no breach of warranty by Holaday-Parks.

---

> where the work of an independent contractor is completed,
> turned over to, and accepted by the owner, the contractor is
> not liable to third persons for damages or injuries
> subsequently suffered by reason of the condition of the
> work, even though he was negligent in carrying out the
> contract, at least, if the defect is not hidden but readily
> observable on reasonable inspection.

Smith v. Dabbs-Williams Gen. Contractors, LLC, 287 Ga. App. 646, 647 (2007).

As to Holaday-Parks' claim that no documents have been provided, AT&T responds that it produced an email from the contractor who performed the repair work, which states the damage amount, during a Rule 30(b)(6) deposition of AT&T, and produced a change order estimate during discovery. Exs. Y & Z to Decl. of Seann C. Colgan in Supp. of Pl's Opp'n to Holaday-Parks Mot. for Summ. J. (docket no. 100). Holaday-Parks complains that the email is not an invoice or receipt, merely a number, and that the change order estimate does not adequately distinguish the repair work on the manway from other work. Although AT&T's damage claim in this case is not a model of billing clarity, AT&T has produced some documents to support its claim of damages, and the Court accordingly declines to grant summary judgment to Holaday-Parks on this basis.

As to Holaday-Parks' argument that it did not breach the warranty because it was not allowed to repair or replace the alleged damage, the parties dispute this point as a factual matter. The warranty provision at issue provides that, in the event of a breach, Holaday-Parks "shall either 1) provide information satisfactory to [AT&T] that no breach of warranty in fact occurred or 2) at no additional charge to [AT&T], promptly take such action as may be required to correct such breach." Construction Agreement Article 4, subsection D. AT&T asserts that it asked Holaday-Parks to make the repairs but that Holaday-Parks delayed responding and then refused to undertake the excavation of contaminated soil necessary to correct the breach. Rather than spilt the repair work between Holaday-Parks and another contractor, AT&T determined

Holaday-Parks should not complete the repair work. Holaday-Parks, in turn, characterizes the exchange as AT&T having "refused [Holaday-Parks] the opportunity to do the repair itself," and that this refusal should absolve Holaday-Parks from any breach of warranty claim. Holaday-Parks Motion for Summary Judgment at 14. Because AT&T has presented affirmative evidence showing that Holaday-Parks did not "promptly take such action as may be required to correct such breach," the Court declines to award summary judgment to Holaday-Parks on this claim.

### 4.      AT&T's Overpayment Claim

Holaday-Parks seeks to dismiss AT&T's Fourth Cause of Action for overpayment on the basis that AT&T did not attempt to meet with or negotiate with Holaday-Parks, as required by the dispute resolution procedures of the Construction Agreement.[6] Construction Agreement Article 4, subsection D.

AT&T responds that Holaday-Parks has waived a right to compel arbitration, citing to USA Payday Cash Advance Center # 1, Inc. v. Evans, 281 Ga. App. 847, 849 (2006) (upholding the trial court's conclusion that defendants had waived their right toarbitration by engaging in actions inconsistent with the right to arbitration). "The question of what constitutes a waiver of the right of arbitration depends on the facts of

---

[6] Holaday-Parks also initially claims AT&T failed to comply with the requirement to submit claims to mandatory arbitration, but does not contest AT&T's argument that the amount in controversy falls outside of the terms of the mandatory arbitration provision. Holaday-Park's Reply at 13 (docket no. 110).

each case." Id.[7] AT&T points to the fact that Holaday-Parks has waited until the eve of trial to seek dismissal of this claim on the basis of the dispute resolution provision in the Construction Agreement, rather than move to compel arbitration early in the litigation, and in the meantime conducted discovery specifically related to the overbilling claim.  Holaday-Parks does not respond to AT&T's strong waiver argument. Because it appears Holaday-Parks may have waived its argument that AT&T is precluded from bringing an overbilling claim for failure to comply with the dispute resolution provision of the Construction Agreement, the Court denies the motion.

## II.   CONCLUSION

(1) The Court hereby GRANTS in PART and DENIES in PART AT&T's Motion for Partial Summary Judgment, docket no. 88, as follows:

    a. The Court GRANTS AT&T's motion for summary judgment as to AT&T's claim for Breach of Contract for performance of defective work and for failure to provide written notice to AT&T of defects in work; and

    b. The Court DENIES AT&T's motion for summary judgment as to AT&T's claim for Breach of cContract for failure to supervise and as to Holaday-Parks' affirmative defenses.

(2) The Court hereby DENIES Holaday-Parks' Motion for Summary Judgment, docket no. 90.

---

[7] For instance, in Evans the defendants had "mov[ed] to compel arbitration more than a year after the filing of the complaint; extend[ed] the time within which to respond and respond[ed] to discovery; oppos[ed] plaintiffs' motion to amend on the merits; and fil[ed] leaves of absences and motions for pro hac vice admissions." Id.

IT IS SO ORDERED.

DATED this 22nd day of November, 2011.

Thomas S. Zilly
United States District Judge